24-1093 Pamela Smith v. Home Depot, USA 24-1150 Jody Bourgeois v. The Gap, Inc. Phil Freyetta v. Bursar & Fisher v. The Plaintiff's Appellants I'm joined by my colleague, Matthew Girardi, and may it please the Court, this case... You're going to reserve time for rebuttal? Yes, I'd like to reserve three minutes. Okay, you may. And let me ask you before you start just one housekeeping matter. I assume this case is before federal court on diversity grounds, correct? That's correct. Okay. And these cases, briefly, Your Honors, involve the conduct whereby our clients engaged in unreceded returns with the various retailers. And the retailers require, to effectuate those returns, that you provide a copy of the driver's license where the retailer takes that license and then transmits the information contained therein to an undisclosed, unnamed third party called the retail equation. The retail equation, as we understand it, essentially performs a on-the-spot credit check, and the defendants will tell you it is for fraud prevention. We view this as a textbook violation of the New Hampshire Driver Privacy Act. The only way for this panel to find that that conduct does not violate the act in our estimate is to do what the lower courts did and find that a driver's license is neither a motor vehicle record nor a department record, as those terms are used in the statute. We think that interpretation strains credulity, and it can't be right. First, the statute itself defines a motor vehicle record to be a license issued or revoked by the department relative to motor vehicles and information, including personal information, contained therein. A driver's license falls squarely within that definition. The district court correctly noted that it had to interpret the statute in light of the New Hampshire rules of statutory interpretation, and then it relied on a New Hampshire Supreme Court case construing this very statute, and under those rules you don't isolate the text of a given provision. You have to consider the entire text of the statute, and you have to consider the purposes of the statute. Here, the prior decision of the New Hampshire Supreme Court said that the purpose of the statute was to bring New Hampshire into conformance with the Federal Driver's Privacy Act. Okay, so focus your argument now that I've set the context for it. Sure. Well, I don't believe that's exactly correct, Your Honor. Okay, what's wrong with it? So the case you're referencing is DeVry in the New Hampshire Supreme Court. That case did not involve the provisions of the statute that this case involves. It involved the same statute. It did involve the same statute. Can we agree on that? It did involve the same statute, but it did not involve these provisions. Can we agree that that case's statement about the purpose of the statute would also apply to the sections involved here? Yes, but that is not an exclusive purpose. Okay. All right, go ahead. It is one of many purposes, and the state which I was getting to, the State of New Hampshire, specifically the Department of Justice and the Department of Safety, submitted an amicus brief in another case that's not before your honors. It's pending in the district court called Stewart v. Burlington Coat Factory. It's identical allegations against Burlington Coat Factory. The state's brief is clear that the purpose of this statute is not solely to bring New Hampshire into compliance with the federal statute, but it is also to expand the privacy protections that the State of New Hampshire gives to its residents. And I think that's clear from the DeVry case even, because if DeVry was simply going to interpret the statute as federal courts have interpreted the federal statute, that's all it had to do. But it did not. It specifically went further and interpreted it as a de novo statute. So there is a difference there between the federal statute and the state statute. This statute simply provides for broader protections than the federal statute does. I know you're asking us to take judicial notice of this amicus brief. Are you also asking us to give weight to the department's interpretation there? I would say yes, although I'd say that the panel doesn't have to, because the arguments that the department makes are the same arguments we've been making all along. They're all included in our reply brief. I would say, though, that this panel, as we started off here, you guys are sitting in diversity and being asked to interpret a state law that has been interpreted very little and never in this context. So under those circumstances, I think federalism and comedy would lean towards certainly considering the interpretation of the state and giving it some weight. I'd also note that this is a case that is unlikely to ever get resolved by a state court, because the remedy here is $2,500. And as this court has held, individuals don't bring lawsuits for $2,500. The only way this case gets brought is as a class action, which will result in the case being brought in federal court under the statute. Let me ask you, because your concern is you'll never get to the state supreme court. What if we were to certify? We note in our brief that we're not opposed to certification. We don't think it's necessary. We think that the panel can decide these issues, because I think they are relatively straightforward issues of statutory interpretation. But certification certainly is an option, and it's not something we're opposed to. We actually advocated for it at the district court level as well. And the district court denied it? The district court ultimately decided to decide the motion in the way that this court did. Let me ask you, I think from what you're saying, because going to the merits, the issue is whether a license is a department record. Are you suggesting that everything that appears in the license, it's basically, even though it's a small card, it's what is in the department in all the records? Because arguably in the records there could be many things that are not in the license itself. For example, fines, or at least I know if I go to the apartment back home that I have my license, I have my car, I have my car insurance. There's a lot of things that are in record. It's got my credit card information. They probably kept it. So why is a driver's license a department record? Well, first, because the statute defines motor vehicle record to include driver's licenses. And a motor vehicle record necessarily has to be a subset of department records. It's the only way to read the statute in harmony, as Judge Lynch suggested that we need to do. Because if you go to 9A and 9B, the sections of the statute that are at issue in the case, 9A makes it a misdemeanor to disclose a department record, but it becomes a felony to disclose motor vehicle records. That leads to the inference that motor vehicle records are a narrower subset that the state chose to give greater protection to than department records. So our argument is that all motor vehicle records are department records. The state, I would note, in its amicus brief, takes the position that the terms mean the same thing. And while we have not taken that position, either way we would win. So the way that the state explains it, and I think is apt, is the information on your plastic driver's license card is simply a copy of the information maintained at the department. Just because the department has given you a copy that you're allowed to carry around and use to give to police officers. Even though it's partial with the possible information they have, because, you know, the license is going to have, like, every single fine you've had or traffic incident or DWI or whatever. Correct. It's some of the information in your driver's record. There's obviously other information that doesn't appear on the license, but it doesn't matter. There is some information on it. It is a department record. Counsel. Yes. This hypothetical may not be correct, but as I was listening to you, it occurred to me, suppose a New Hampshire resident uses the driver's license to go through security at an airport and that the security person takes the license and then scans it into a security check software run by a contractor to the federal government to see whether the information is accurate and whether there is any reason to be concerned that that person is a security threat. On your argument, isn't that also a violation of the statute? I would say no for two reasons. First, in that context, the license holder is providing consent for that practice to occur. Why? They're not asked to sign a consent form. They just are asked, give us an ID. Because airport security advertises that on the TSA check line, and when you purchase an airplane ticket, you are agreeing to undergo that security procedure in order to fly on the plane. So I'd say that's number one. But number two, and probably more apt. So the defendants here could have solved this problem by putting on their websites, if you are going to seek a return without a receipt, we're willing to entertain that, but you're going to have to show us a driver's license? I'm not sure if on the website would suffice necessarily. I don't think that's really before the panel. Well, you just said the TSA website would take care of it. Why wouldn't they? Well, no, I'm saying the TSA security line, when you're waiting in line, takes care of it. But yes, had they provided notice and obtained consent, we wouldn't be here. A central allegation of our complaint is they didn't do that. You've also said just by getting into the line, you have consented. No, I said by purchasing a ticket, you've consented. Regardless, though, Your Honor, I think the more apt perhaps analysis is that the statute provides for various exceptions when this information is allowed to be disclosed for further purposes. And I think that this would fall within those exceptions. Is it providing your driver's license a consent? I'd say it's a consent. Because they're getting it directly from the individual, not from the third party. I'd say it's a consent to the retailer, the specific retailer, seeing the information on it, not to some undisclosed third party. Can I ask you a question? And I keep tripping up on this, but there's another provision of the Act that says proper motor vehicle records shall be kept by the department at its office. And the district court read that to mean that motor vehicle records are ones kept by the department, not ones in someone else's hands, like your driver's license or mine. How do you suggest we consider that? So I think the district court is wrong about that for two reasons. First of all, that uses the term proper. Proper means necessarily a subset of motor vehicle records. It's not all motor vehicle records. Second, and perhaps more importantly, the department issues regulations pursuant to the statutory authority. I know my time is up, but can I finish the question? One of those regulations that we point to in our statute is 5606.06. And that regulation makes clear that it is possible to make information available from a motor vehicle record to another person in violation of the underlying statute, 2260.14. It says it in sections A.2 and A.3, that information obtained from a driver's license which is sold, transferred, or made available to another person in violation of federal law and the provisions of RSA 260.14. So clearly the department envisioned a scenario where somebody could take information from a driver's license, transfer it to another person in violation of the statute. We say that this is that circumstance. Let me just circle back to your first answer, which was that you distinguish between proper motor vehicle records. And I'm not sure how or why you did that. I think the word proper must mean something in the use of the statute. Does it mean something different from a license in your pocket as opposed to a license kept at the department? I don't think so. I think it just means that a certain subset of motor vehicle records are going to be housed at the department. And the driver's license, the information on your license, is housed at the department. It's also provided to you in a copy on your license. That doesn't mean it's not housed at the department. Thank you. Let's hear, then, from Mr. Roth. Please do introduce yourself on the record to begin. Thank you, Your Honors. If it may please the Court, my name is Michael Roth. I represent The Gap, Old Navy, Banana Republic, and Athleta. The counsel table is also Stuart Haskins, who represents Home Depot, and Craig Cardone, who represents TJX. I'll be speaking on behalf of all of the retail defendants. Go ahead. The State of New Hampshire did not criminalize the routine use of information from a person's driver's license to prevent retail fraud. By its plain terms, the New Hampshire Driver Privacy Act does not regulate what someone does with a driver's license that is in their own possession. Not surprisingly, two judges in three different cases read the statute as a whole and reached that exact same result. It was fundamentally under the Act. It's bringing New Hampshire in compliance with the Federal Act, and it requires the Department of Safety to keep personal information and motor vehicle records confidential. That's a core provision of the Act. It then provides exceptions to the confidentiality requirement and lays out who is authorized to obtain motor vehicle records from the Department, what representations those authorized people must make to obtain the records, and then the limited uses those people can make once they've obtained the records from the Department. This case presents a straightforward question of statutory interpretation. Does the plain language of the statute criminalize a retailer using information voluntarily provided by a customer to prevent fraud? And the answer is no. The statute is silent on those points. We don't think you should be considering the amicus brief submitted by the State, but if you do, that's the concession the State made. The statute is silent about this conduct. And to reach the incorrect result that the plaintiffs have offered, it requires isolating phrases of the statute and ignoring its overall purpose. And really what they're asking the court to do is read the definition of motor vehicle records in paragraph one, then skip over all of the substantive provisions of the statute, and then read or misread in isolation certain portions of the criminal enforcement provisions. That's inconsistent with the basic rules of statutory construction that require the court to read the statute as a whole. And there are three issues I'd really like to go over and why that reading is wrong, and conversely why the district court's reading of the statute was correct. And that's the statute's plain language as a whole, the plain language of the enforcement provisions, and third, how the statute must be read in light of the overall statutory structure. So first turning to the statute as a whole, the DPA is divided into 17 paragraphs, and it does define motor vehicle records in the first paragraph, but the core provision is paragraph two. In that provision, it says that the department must keep proper motor vehicle records at its office and accept as provided in this section, those records must be kept confidential. I don't think proper motor vehicle records refers to a subset of motor vehicle records. Keeping proper records is a term that's used ordinarily in business, and it means you have to keep full, accurate, complete records, and they have to be accessible. After requiring the department to keep the records at its office and keep them confidential, the statute provides exceptions to that confidentiality requirement, and those are laid out in paragraphs three through five. And paragraph five is illustrative of how this works. It sets out 10 circumstances where disclosures are permissive, and they're either authorized to people who give consent, and that's in eight and nine, or they're opt-out rights, and that's in one through seven, and then there are limitations on consent, and that's in paragraph five, C1. And then paragraph six deals with whether people who obtain records can sell them, sell, rent, or transfer them. And this is important. Paragraph seven is the only part of the statute that deals with motor vehicle records that are in a person's own possession, and it's completely silent on what happens once they get them. The statute places no limitations on what a person does with the information in their license or what recipients of that information subsequently do with it. Turning to the enforcement provisions as a whole, and this is important because the statute isn't just dealing with the artifact of a card, the plastic card we all carry around. It's dealing with the information. The department's required to keep information. When you go to the department and you're requesting to get motor vehicle records, they're not handing you someone's driver's license. They're giving you a printout with the whole history. Was the license revoked? Was it issued? Was it suspended? Do you have tickets? All kinds of information. So the legislature could have, for example, under your argument, saying that, you know, the driver's license is inapplicable. The legislator could have, for example, added language saying that any information that would otherwise be available in the driver's record falls within the statute as well, which is not the case here. Would I be correct in saying that? Yes, that's correct. When somebody goes and gets a driver's license in New Hampshire, they're not surrendering to the state the ability to control their name, address, and phone number. That would really be what the reading that the plaintiffs are advocating for would lead to, and that's because the statute makes it a misdemeanor to use a motor vehicle record and the information in a way that's not authorized by the state. And people just aren't giving up those kind of rights by getting a driver's license. The enforcement provisions, and there are three of them, right? They start very broadly. You have a civil enforcement provision, which should be the broadest, and then a misdemeanor provision, and then there's a felony provision. And those should work in an inverse pyramid. And the way that the plaintiffs are advocating for would actually flip that on its head because the civil enforcement provision requires that someone be aggrieved by a violation of the section, and it obviously requires some other violation of the underlying statute. The felony provision also requires a violation of this section, but the plaintiffs want to ignore that and say that it just, any time you're using or showing someone's driver's license, it's a felony. It creates a broader liability than the civil enforcement provision itself. If I might, going back to your, the information kept is broader than that which is set forth on the driver's license and that the statute in no way intended to limit the rights of people to use the information on the driver's license. So your opponent says, that's true. Our clients could show them that to TJ Maxx, anybody else. That's not what we're complaining about. What we're complaining about is that the stores then, without our consent, turn that information over to somebody else. And in that sense, our reading furthers the privacy interests of the holders of the driver's license. I think that's what they're arguing. So what's the response to that? The response to that is this is not a consent-based statute. There's nothing in this statute that places the consent, the driver's license holder, the consent of what somebody does with the license once it's been voluntarily provided to them. The legislature could do that and it has done that in certain circumstances. There's another statute that's 263.12 that's entitled, the chapter's entitled Driver's Licenses and it has 100 sections regulating driver's licenses and that includes limitations on scanning, retaining, and copying the information in a driver's license. The legislature knows how to do that expressly and it knows how to write a consent-based statute. I mean, there are provisions of this statute that require consent. When you get into the enforcement provisions, there's not a single reference to consent anywhere in those provisions. What it talks about is who's authorized and the authorization is from the state. Who is the state authorized to receive information from the DMV and what can they do with the information they get from the DMV? The state could have regulated this stuff. That's not our argument. They just haven't done it in the DPA. It's just not there. And these are criminal statutes. Let's not lose sight of that. If the state wants to criminalize conduct, it has to do it expressly. It can't make it a felony by implication. You walk into like constitutional problems. Then you have the void for vagueness doctrine. We have the rule of lenity. If you want to criminalize conduct, you do it expressly and the state has expressly laid out certain things that would violate the statute. What it hasn't done is regulate what somebody does with a driver's license in their own possession and what people do with that driver's license once they receive it. But something can be criminal or not, but regardless of that, it could be against civil law. That's not a crime. That's correct. The provisions that they are relying on here are the criminal provisions. I see my time is up. Please answer. The criminal provisions need to be interpreted the same way whether somebody has brought a civil action or a criminal action on them. We don't interpret the statute differently one way or the other. And the Supreme Court has made that very clear, the void for vagueness doctrine, the rule of lenity. They apply when there's a criminal statute, even if it's being applied in a civil context. And they could have just relied on the civil provision. Does the New Hampshire Supreme Court say that? If so, what is your case? I'm not aware of a case that's expressed, a New Hampshire case that's expressed as the Leo Call versus Ashcroft case in the Supreme Court that said it directly. Counsel, your time is up and I know the co-counsel has five minutes. Thank you, Your Honor. Please do introduce yourself back on the record to begin. Good morning, Your Honors. Craig Cardone on behalf of the TJX Companies. And again, speaking on behalf of all of the defendant appellees here. I wanted to just touch on the consent issue that Mr. Roth was discussing earlier. Again, the word consent appears nowhere in the statute. The word unauthorized does. However, it only appears in the misdemeanor section. Unauthorized is not an element of the felony violation. So under that context and in that analysis, again, Judge Lynch using your analogy here to providing it to a TSA person. There is no consent element to the felony statute. So a person with a New Hampshire driver's license who is under plaintiff's interpretation of the word offer, that it's not an offer for sale, is offering their driver's license to the TSA, has just committed a felony. Similarly, when we came into the courtroom downstairs, or at least everybody other than the courtroom staff who showed their driver's license. If it was a New Hampshire driver's license, the plaintiff would have an argument that they haven't committed a misdemeanor because of the unauthorized aspect, but they still committed a felony. Do we actually have to face and resolve that issue to decide this case? I believe the district court had a, this is like an additional ruling. Your Honor, I don't believe it needs to be resolved because the issue here, the core issue is whether these records, whether it's a department record or a motor vehicle. If we don't need to resolve it, why would we resolve an issue in this context when even on your argument there are constraints on how the New Hampshire driver's license and government can use this information? I don't believe it needs to be resolved in that context. I think it can be resolved in the same manner in which the district courts resolved it, which is the interpretation of... There wouldn't be two different interpretations of this provision, one for government and one for private people. So why would we want to get into it? I think I'd go back to the point where I don't think you need to, nor did the district court below, simply finding that the artifact is not a department record. And I think that's the outcome determinative aspect of this here. I was raising this other issue for purposes of showing that the plaintiff's interpretation yields all sorts of absurd results, and therefore it shouldn't be considered the correct interpretation under Devere, the New Hampshire Supreme Court's decision that says, again, you have to look at the overall context for this. Now, looking simply at the nature of what happened here, retailers asking for information to be able to give you money back when you have no proof that you bought the item from them, and then using a vendor to do the analysis for them. To the extent we are even entertaining some consent concept, that consent is implicit, that there shouldn't be a restriction on a retailer doing something that retailers don't normally have the capability of doing, going to an expert. This is an agency situation. They hired a vendor who does this. If the plaintiff is correct that they consented and that somehow absolves the plaintiff themselves of liability, then they gave it to the retailer for purposes of fraud prevention and analysis, and the retailer used a vendor as their agent. The allegations of the complaint are wholly consistent with an agency relationship. It doesn't say the vendor went and used this information for some other purpose. It says almost in real time, they're giving you a response. Let's assume even if the vendor, who shouldn't have, did something with that, there still wouldn't be a claim. There would probably be, I assume there's maybe 100 other causes of action, but not this one under the statute. That's right. Can I suppose the vendor then says to the New Hampshire Motor Vehicle Registry, confirm please that this is in fact an accurate license, that you have a record of it, and the Motor Vehicle Department chooses to do so. Isn't that a violation of the statute? In that situation, if the Motor Vehicle Department was not complying with its own regulations for providing the information, then the Motor Vehicle Department would have potentially violated the statute. This goes to your implied consent argument. I think if that, in the implied consent argument, again, I don't agree that there is consent in the statute, but under that argument, then yes, the individual is providing their information and providing consent with it for all purposes for completing the transaction, no matter where in the loop that is. It goes from the retailer to the vendor to the Department of Motor Vehicles, back to the retailer, and the person gets their money. Okay. Thank you, Kevin. Thank you. Mr. Frietta, you have three minutes for rebuttal, starting now, when you hit the podium. Please reintroduce yourself on the record. Thank you, Phil Frietta, for the plaintiff appellants again. May it please the Court. My adversaries raised a lot of points that I'd like to respond to as quickly as I can. First, beginning with the consent not being a defense that is statute argument, that's the first we've heard such an argument. I don't think it's properly before this Court, but to analyze it, 9A talks about unauthorized disclosure. So we already have that. But perhaps more fundamentally, Sections 5C1 of the statute, as well as 6, talk about consent regimes and unauthorized disclosure of information. So it's clear that there is a consent overflow here to this statute. Now, my adversary went into the concept of implied consent, and frankly, I don't think that's really at issue here. I'm not even sure if that would be a defense to this statute, but regardless, I don't think it's an appropriate inquiry on a Rule 12 motion to determine if a reasonable consumer would have expected some third-party agency, the retail equation would be out there, nor is it an appropriate inquiry to determine if the retail equation is an agent versus an independent contractor versus whatever other kind of business relationship they could have. So we're here on a Rule 12 motion. I think that's getting too far afield. I'd also like to address the discussion of proper. I think it's worth noting that Section 2B, after the term proper motor vehicle records is used in 2A, 2B talks about how copies of such records may be introduced as competent evidence, and it therefore indicates that copies of, quote-unquote, proper motor vehicle records suffice. Finally, I'd note that the statute itself, the provision that we're suing under, 9B, does not use the qualifier of proper. It says motor vehicle records as a whole. So I think there needs to be some sort of a distinction there. And then the final point I would make is, and I think Judge Lynch was capturing this, our case is not arguing that by obtaining a driver's license from the state of New Hampshire you've surrendered rights. It's quite the opposite. The state of New Hampshire has given you additional protections as a holder of a license. And those protections are to control that information, to control who it is shared with. And in this particular case, my clients did not consent to share that information with the retail equation. That's a violation of the statute, and New Hampshire has given them a private right of action. We ask this Court to overturn the District Court's ruling and allow us to proceed to correct this infraction. Thank you, Counsel.